

**FILED**

JAN 1 1 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

In re                                              )    Case No. 09-48595-E-13L
                                                   )    Docket Control No. PPR-1
PHILIP LESLIE FRAZIER and                          )
JENNIFER JO FRAZIER,                               )
                                                   )
                        Debtors.                   )
_____                )

**MEMORANDUM OPINION AND DECISION**
**Opposition to Motion to Value and Objection to Plan**
**Confirmation by Real Time Resolutions, Inc.**

The court has been presented with two matters relating to the confirmation of the Debtors' proposed Chapter 13 Plan. The first is a Motion to Value the secured claim held by Real Time Resolutions, Inc. ("Real Time"). The second matter is the Real Time Objection to Confirmation of the Debtor's Chapter 13 Plan. Confirmation of the Debtors' proposed Chapter 13 Plan is dependent upon the determination of value of the Real Time secured claim. Bank of America holds a claim in this case secured by the first (senior) deed of trust against property commonly identified as the Illinois Avenue Property secures an obligation owed to Bank of America. The Real Time claim is secured by a second (junior) deed of trust against the Illinois Avenue Property.

Based on the undisputed value advanced by the Debtors, the Real Time secured claim would be valued at $0.00 pursuant to 11 U.S.C. §506(a). Under the terms of the proposed Plan, the Debtors would pay $0.00 on this secured claim. Upon the completion of the

plan, the Debtors would demand the reconveyance of the deed of trust securing that claim deed based upon the secured claim of $0.00 having been paid in full.

In response to the motion to value, Real Time filed an opposition asserting that bifurcation of its claim into a secured claim and an unsecured claim pursuant to 11 U.S.C. §506(a) is meaningless because both the secured and unsecured portions must be paid in full under any Chapter 13 Plan. Real Time advances the argument that its claim must be paid in full because the Debtors obtained a discharge in the Chapter 7 case filed on August 3, 2009, case number 09-36325, ("Chapter 7 Case"). The Debtors having obtained a discharge in the 2009 Chapter 7 Case, they are now barred from obtaining a discharge in any subsequent Chapter 13 case filed within four years of August 3, 2009. *See* 11 U.S.C. §1328(f)(1).

Real Time asserts that since the Debtors are barred from obtaining a discharge, 11 U.S.C. §1325(a)(5)(B) requires the Chapter 13 Plan must provide that both the secured and unsecured portions of the Real Time claim be paid in full. Because the proposed Plan does not provide for paying the secured and unsecured portions of this claim in full, Real Time objects to confirmation.

Real Time also asserts that even if valuation of its secured claim is proper, the Plan is not proposed in good faith. The Debtors were previously barred from valuing the Real Time secured claim and having the lien removed in the Chapter 7 case. The Debtors having obtained their Chapter 7 discharge just three days before commencing this Chapter 13 case, the substance of the

Chapter 13 case is merely an improper attempt to obtain the heretofore barred removal of the Real Time lien.

The Debtors reply, asserting that both confirmation of the proposed Plan and a valuation of the Real Time secured claim pursuant to §506(a) are proper because obtaining a Chapter 13 discharge is not required for the claim valuation or payment of the allowed secured claim in this case.  11 U.S.C. §1325 only applies to a creditor's secured claim, which is only that portion of the claim determined secured pursuant to §506(a), which in this case is $0.00.   The proposed Chapter 13 Plan provides for payment of the $0.00.

The Debtors further assert that the proposed Chapter 13 Plan is necessary and in good faith.  Under the proposed Chapter 13 Plan the Debtors are curing an arrearage in excess of $20,000.00 secured by the first deed of trust to Bank of America, paying the restructured $4,500.00 claim secured by their vehicle, and paying in full the delinquent $16,417.00 Internal Revenue Service claim. Absent the Chapter 13 Plan, the Debtors would be unable to cure the arrearage and would lose their home.

In addition to the substantive response, the Debtors contended that Real Time does not have standing to oppose the motion to value or object to confirmation of the Chapter 13 Plan.   The lack of standing is asserted based on Real Time not providing any evidence in these proceedings that it has been assigned the Countrywide Credit Line.   The court ruled at the time of the hearing that Real Time had provided a minimal showing that it had an interest in the claim at issue to assert an objection to confirmation in this case based on the testimony provided at the hearing.

**VALUATION OF SECURED CLAIMS AND CONFIRMATION OF CHAPTER 13 PLANS FOLLOWING THE DEBTOR OBTAINING A CHAPTER 7 DISCHARGE**

The court is presented with several issues in this case.  The cornerstone issue in this case is whether the Debtors can confirm a plan in this case which does not provide for payment in full Real Times secured and unsecured claims.   If the plan cannot be confirmed as a matter of law, then there is no reason to rule on the motion to value, since the reason for making a §506(a) secured claim determination is for the purpose of treatment under a confirmed Chapter 13 Plan.

**History of Bankruptcy Filings by the Debtors.**

On August 3, 2009, Philip Leslie Frazier and Jennifer Jo Messerall Frazier filed a voluntary Chapter 13 case, no. 09-36325, which was converted to a Chapter 7 case on August 17, 2009 (the "Chapter 7 Case").   The scheduled general unsecured claims in that case exceeded the debt limits imposed by 11 U.S.C. §109(e) and the Debtors were not eligible to proceed under Chapter 13.   Schedule D filed in the Chapter 7 case lists Bank of America as the creditor with a secured claim in the amount of $275,681.00, with a first deed of trust against the Illinois Avenue Property securing that claim.   Bank of America is also scheduled as having a second secured claim in the amount of $47,400.00, with a second deed of trust against the Illinois Avenue Property securing the second claim.[1]   The Debtors' discharge was entered on December 21, 2009.

The Debtors commenced the present Chapter 13 case on December 30, 2009, case no. 09-48595, (the "Chapter 13 Case") nine

---

[1]   Real Time asserts its claim in this case as the successor in interest to the Bank of America claim secured by the second deed of trust scheduled by the Debtors in their Chapter 7 case.

4

days after the entry of their discharge in the Chapter 7 Case. The Debtors admitted that the Chapter 13 case was filed due to a pending foreclosure sale by Bank of America on the first deed of trust.

**Lien Stripping and Chapter 20 Cases Prior to the BAPCPA.**

The filing of a Chapter 7 case to discharge debts and subsequent filing of a Chapter 13 case and plan providing to modify a secured claim which rode through the prior Chapter 7 case is commonly referred to as a "Chapter 20." Prior to the enactment of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), 119 Stat. 23, a Chapter 20 was a useful tool for a debtor who exceeded the monetary limits for a Chapter 13 case. *See* 11 U.S.C. §109(e). By filing the Chapter 7 case to discharge unsecured indebtedness, debtors could reduce their debts to be within the monetary limits for the filing a subsequent Chapter 13 case. Then, through the subsequent Chapter 13 plan debtors could save their residence from foreclosure by curing any arrearage through the plan or establish a court enforced repayment plan for nondischargeable debt, such as tax obligations. Additionally, debtors could seek to have the claim secured by a junior lien valued pursuant to §506(a) for treatment under the confirmed Chapter 13 plan. Through such valuation the debtor would disburse payments for only the actual value in the collateral for the secured claim. Valuation of the claim and payment of the secured value resulted in the creditor having to reconvey upon payment of the amount determined to be the §506(a) secured claim.

The secured claim treatment under the Chapter 13 plan to reconvey a junior lien for a payment equal to the value of the

5

collateral is commonly called a "lien strip."  At the completion of the plan and payment of the secured claim in the amount determined under §506(a), the debtor demands and obtain a release of the lien because the secured claim has been paid.

The short hand reference to a "lien strip" is not an accurate statement of the legal effect of the Chapter 13 plan, Bankruptcy Code, and order of the court.  By the §506(a) valuation the court does not remove or "strip" the lien from the property.  Rather, upon the completion of the Chapter 13 plan and payment of the value in the collateral securing the claim, there is no obligation remaining to be secured by the lien.  With the obligation satisfied, the creditor is required under the terms of the note, deed of trust, and applicable state law to reconvey the deed of trust.[2]  In addition, §506(d) provides that to the extent that a claim against the debtor is not an "allowed secured claim" and the lien securing the claim is void.

As correctly cited in Real Time's Opposition to Motion and Objection to Confirmation, most courts addressing this issue to date have concluded that the debtor must obtain a discharge in the Chapter 13 case in order to obtain the release of a lien based on

_____

[2]  Upon payment of the secured obligation the lien is extinguished and the trustor/mortgagor is entitled to a certificate of discharge, the mortgage cancelled or satisfied as of record, and the deed of trust reconveyed.  4 WITKIN SUMMARY OF CALIFORNIA LAW, TENTH EDITION, §117, citing California Civil Code §2939 et seq.; Rest.3d, Property (Mortgages) §6.4; 4 Powell §37.33; C.E.B., 2 Mortgage and Deed of Trust Practice 3d, §8.84; and 13 Am.Jur. Legal Forms 2d, §179:511.  The lien is accessory to the debt it secures and does not have any additional, independent validity.  See WITKIN SUMMARY OF CALIFORNIA LAW, Id., §47, and California Civil Code §2909.

6

a §506(a) secured claim valuation.  The discharge in a Chapter 13 case is issued upon completion of the Chapter 13 Plan.  The entry of the discharge signifies that the debtor has successfully completed the Chapter 13 Plan by paying all creditors the amount required under this new contract embodied in the Plan.  What some courts concluded to be a "discharge requirement" for a lien strip was comprehensively discussed by several judges in the combined cases addressed in the *In re Winitzky,* 2009 Bankr. LEXIS 2430, decision.

The analysis in *Winitzky* cites back to one of the earliest decisions addressing this question, *In re Akram,* 259 B.R. 371 (Bankr. C.D. Cal. 2001).  The *Akram* decision is based upon that court's reading of the holding by the Ninth Circuit Court of Appeals in *In re Veteran Street Co.,* 144 F.3d 1288 (9th Cir. 1998), to be that a §506(a) secured claim determination in that case did not have "*res judicata* effect" until after a Chapter 11 plan was confirmed.  Because the debtor in a Chapter 11 case commonly receives a discharge at time of confirmation, the *Akram* court concluded that obtaining the discharge was a necessary event for the lien to be released based on a §506(a) valuation of the creditor's secured claim.

This court does not concur with conclusions in prior decisions that, unless the affected creditor accepts the proposed plan treatment, the debtor must be able to obtain a discharge in the Chapter 13 case for there to be a §506(a) valuation and a "lien strip" through a Chapter 13 Plan.  In coming to this conclusion, this court begins with the holding of the Ninth Circuit Court of Appeals in Veteran Street Co. that a §506(a) valuation is effective

7

and used in the bankruptcy case consistent with the purposes for which the valuation was made by the court. *In re Veteran Street Co., Id.*, at pg. 1291.

In *Veteran Street Co.*, the valuation was made for the purpose of the Chapter 11 debtor's proposed plan of reorganization. When confirmation of the debtor's proposed Chapter 11 plan of reorganization was denied by the court, the debtor in possession was not allowed to use the valuation for other purposes. The debtor in *Veteran Street* attempted to use the §506(a) valuation as a basis for the use of cash collateral to pay the debtor-in-possession's attorneys' fees. When the debtor-in-possession could not confirm the Chapter 11 plan, the *Veteran Street* court ruled that the §506(a) valuation became irrelevant. *Id.*, at pg. 1291-1292. The ruling was not based on the debtor not obtaining a discharge.[3]

Another case cited in *Winitzky* is *In re Jarvis*, 390 B.R. 600 (Bankr. C.D. Ill. 2008). Under the terms of the plan in *Jarvis*, the debtor proposed to make aggregate payments of $1,051.08 only a period of twelve months. The payments were sufficient to make only the current monthly payments on loans secured by the senior lien on the debtor's residence and for the debtor's car, neither of

_____

[3] In re Veteran Street, Id., ,

In the present case, the bankruptcy court valued the Property in light of Veteran's proposed plan of reorganization. Since the bankruptcy court rejected the plan, the valuation of the Property served no purpose under the Bankruptcy Code. Therefore, the valuation should not affect Gold Coast's rights to postpetition rents under section 552.

The word "discharge" was not used by the Ninth Circuit in the *Veteran Street* decision. The only time it appears is in the text of 11 U.S.C. §349 which is cited in footnote 2.

which were in default. Under the *Jarvis* Chapter 13 plan, no payments were made to creditors holding priority or general unsecured claims, and no arrearage was being cured to prevent a foreclosure. One of the grounds for denying confirmation in *Jarvis* was a finding that the plan was not in good faith, but merely contrived camouflage to make zero payments to the creditor whose lien was being stripped. *In re Jarvis, Id.*, pg. 606.[4] That plan not being proposed in good faith, confirmation was denied.

Though the *Winitzky* line of cases focus on the discharge as the requirement for the lien being removed, there is no dispute that a discharge, in and of itself, does not exonerate the debtor of the obligation or remove a lien. The discharge imposes a statutory injunction preventing the creditor from enforcing the discharged debt against the debtor personally or against specified assets. *Johnson v. Home State Bank*, 501 U.S. 78 (1991). The discharge does not release a lien from the Debtor's property, and the lien may continue to be enforced against the debtor's property which is subject to that lien.

In *Dewsnup v. Timm*, 502 U.S. 410 (1992), the Supreme Court addressed whether a debtor could obtain from the court a §506(a) secured claim value determination in a Chapter 7 case and then have §506(d) work to statutorily avoid the lien for any amounts in excess of the §506(a) secured claim. The Court in *Dewsnup* concluded that §506(d) could not be used to avoid a lien in a Chapter 7 case, notwithstanding a valuation of the secured claim

---

[4]    The court in Jarvis also denied confirmation on the alternative grounds that the debtor was barred a discharge in the Chapter 13 case and the plan did not provide for payment of the secured and unsecured portions of the creditor's claim.

9

under §506(a). *Id.* at 417. This decision was not based on the plain reading of the statute, but the Supreme Court concluding that there was not a clear Congressional intent to change well-established law that a bankruptcy discharge does not affect a creditor's lien.

The Supreme Court followed with the decision in *Nobelman v. American Savings Bank*, 508 U.S. 324 (1993), addressing the question of whether §506(a) could be used to bifurcate a claim into a secured and unsecured claim for payment through a Chapter 13 plan. The debtor in *Nobelman* sought to have the claim secured by their residence reduced to the value of the property, and the balance of the claim paid as an unsecured claim through the plan. The Supreme Court concluded that "Section 1322(b)(2), the provision at issue here, allows modification of the rights of both secured and unsecured creditors, subject to special protection for creditors whose claims are secured only by a lien on the debtor's home." *Id.* at 327.

The Supreme Court rejected the proposed valuation, confirmation, and potential lien reconveyance in *Nobelman* because of the specific limitation stated in 11 U.S.C. §1322(b)(2) which prohibits modifying the rights of the creditor holding a claim secured only by the debtor's residence. Because the plan could not be confirmed, there was no reason to proceed with a valuation of that creditor's secured and unsecured claims.

The Ninth Circuit Court Appeals subsequently held in *Zimmer v. PSB Lending Corporation (In re Zimmer)*, 313 F.3d 1220 (2002), that the §1322(b)(2) debtor's primary residence limitation does not apply when there is no value in the residence to secure the lien at

issue.[5]  If there is no value for the secured claim as determined under §506(a), then the creditor's claim is not secured and the anti-modification provisions do not apply.

The modification of the rights of a creditor holding a secured claim through a §506(a) valuation and Chapter 13 Plan occurs through a series of events.  First, the secured and unsecured claims are valued under §506(a).  Second, the debtor confirms a Chapter 13 Plan.  It is the Chapter 13 Plan, by which the debtor commits him or herself to a plan, which becomes the new contract between the debtor and creditors.  *In re Than*, 215 B.R. 430 (9th Cir. B.A.P. 1997).  Third, the debtor pays the full amount of the §506(a) secured claim amount through the Chapter 13 Plan, resulting in there being no remaining obligation secured by the lien. Fourth, upon completion of the Chapter 13 Plan (new contract with the creditors) and payment of the §506(a) claim, the debtor then demands reconveyance of the deed of trust or release of the lien pursuant to the terms of the underlying note, deed of trust, security instrument, applicable law, or 11 U.S.C. §506(d).

It is the completion of the plan and performance under the new contract created under the Bankruptcy Code which result in the debtors having the right to demand and receive the release of the lien.  The granting or denying of a discharge does not alter or remove the lien, and is not the basis for the court to denying a motion to value a creditor's secured claim.

---

[5] This ruling was consistent with the five other Courts of Appeals and two Bankruptcy Appellate Panels which had previously addressed the issue, and represents the majority view that a claim for which there is no value in the collateral is a completely unsecured claim for valuation and Chapter 13 plan purposes.

## THE BACPA AMENDMENTS DO NOT REQUIRE THE DEBTORS OBTAIN A DISCHARGE FOR A CHAPTER 20 LIEN STRIP TO BE EFFECTIVE

With the 2005 amendments to the Bankruptcy Code, Congress altered the landscape for a debtor attempting to utilized Chapter 13 of the Bankruptcy Code. Before a debtor may attempt to enforce the provisions of the new contract embodied in a Chapter 13 plan, the debtor must first obtain confirmation of the plan.  The BAPCPA included an amendment to 11 U.S.C. §1325(a)(5) concerning treatment of secured claims under a Chapter 13 plan.   A condition of confirmation is that for each allowed secured claim provided for by the plan (1) the holder of such claim accept the Plan or (2) the holder retains the lien securing such claim until the earlier of (a) payment of the underlying debt determined under non-bankruptcy law or (b) a discharge being granted under section 1328, with the value of payments under the plan to be not less than the allowed amount of the such claim.[6]

To address Real Time's contention that the amendment to 11 U.S.C. §1325(a)(5) mandates payment of both the secured and unsecured portions of its claim because the Debtors cannot obtain a discharge, the court must carefully consider the words used by Congress in crafting 11 U.S.C. §1325(a)(5).   *See   Nobelman v. American Savings Bank, Id.*, and the Ninth Circuit Court of Appeals in *Zimmer, Id.*, giving effect to the language chosen by Congress to interpret the anti-modification provisions of 11 U.S.C. §1322(b)(2).

---

[6] Prior to the 2005 amendments, a debtor was only required to provide in the plan that the creditor retain the lien and the payments on the claim to be not less than the allowed amount of such claim.

A creditor entitled to assert the provisions of 11 U.S.C. §1325(a)(5) must be the holder of an "allowed secured claim." A "secured claim" is a term of art under the Bankruptcy Code, *Nobelman*, at pg. 331,[7] and is the secured claim determined pursuant to §506(a). As the Ninth Circuit has concluded in *Zimmer*, for the creditor to have a "secured claim" there must be value for the creditor's interest in the collateral. If there is no value, then the creditor has a lien and an unsecured claim. *In re Zimmer, Id.*, at pg. 1225

As directed by the Ninth Circuit Court of Appeals in *In re Zimmer, Id.*, pg. 1226, if there is no value in the collateral to secure the claim, then Real Time does not hold a secured claim and therefore does not have a basis for asserting rights under 11 U.S.C. §1325(a)(5). The court must now make the U.S.C. §506(a) valuation determination of the Real Time secured and unsecured claims.

### REAL TIME DOES NOT HOLD A SECURED CLAIM AND THE OBJECTION TO CONFIRMATION IS OVERRULED

In the present case, the evidence before the court establishes that the Illinois Ave Property has a value of $240,000.00 and is subject to a first deed of trust to secured a $275,681.00 claim held by Bank of America. The Bank of America deed of trust is

---

[7]    In *Nobelman*, the Supreme Court found significance in Congress choosing to use the phrase "claim secured only by a security interest in real property..." in carving out an exception to 11 U.S.C. §1322(b)(2), and concluded that such language referenced rights and interests other than those relating to a secured claim. In 11 U.S.C. §1325(a)(5) Congress limited that section to each "allowed secured claim." Thus, the creditor attempting to assert rights under 11U.S.C. §1325(a)(5) must have a secured claim.

senior in priority to the deed of trust securing the Real Time claim.  This court finds persuasive the opinions of value stated by the Debtors as the owners of the property.  Further, no opposition to the value asserted by the Debtors or counter evidence was introduced by Real Time to support any other value for the Illinois Avenue Property.

The court finds that with the Illinois Avenue Property has a value of $240,000.00, the senior lien held by Bank of America secures an obligation of $275,681.00, and that the Bank of America senior lien exhausts all value in that property.  There is no value in the Illinois Avenue Property to secure the Real Time claim.  Pursuant to 11 U.S.C. §506(a) the court determines that the value of the Real Time secured claim is $0.00 and the Real Time general unsecured claim is $53,591.82.

**THE DEBTORS' PLAN IS PROPOSED IN GOOD FAITH
AND MAY BE CONFIRMED**

Real Time has objected to confirmation on several grounds.  The first objection to confirmation is based on the assertion that the Debtors are barred from confirming a plan without paying Real Time's claims (secured and unsecured) in full because of the discharge they received in the recent Chapter 7 case.  As set forth above, Real Time's objections based on 11 U.S.C. §1325(a)(5) are overruled because Real Time does not hold a secured claim to raise such objection in this case.

Real Time further objects asserting that the Debtors are not proceeding in good faith with the proposed Plan because the Debtors' food budget is $350, their phone/internet/TV/cell phone expense is $370, and the Debtors' business expense attachment

14

includes an additional expense for cell phone. *See* Debtors'
Schedule J, Exhibit "2" filed by Real Time.

Schedule J filed by the Debtors lists $5,261.19 in total
expenses for a month. Of these, $2,612.19 are for business
expenses. For the Debtors' family of two persons (Schedule I),
their personal expenses are $2,649 a month. This does not
including a housing expenses, which is paid through the Plan as a
Class 1 claim.

The Business Income and Expense attachment to Schedule J lists
the following business expenses:

| | |
|---|---:|
| Fuel | $  600.00 |
| Liability Insurance | $  100.00 |
| Workers' Comp Insurance | $  100.00 |
| Cell Phone | $  250.00 |
| Labor Ready | $1,000.00 |
| Supplies | $  550.00 |

In response to this objection, the Testimony of Jennifer
Frazier has been provided. She states, under penalty of perjury,

     i.   The Phone/Internet/TV service are bundled services
        for  which the total charges are $140 a month.

    ii.   The $600.00 a month in fuel expenses are necessary
        for Mr. Frazier's work as a self employed cabinet
        installer. His current job is working at Fairchild
        Air Force Base in Washington State and is
        anticipated to continue for at least the next four
        and one-half (4½) years.

The court finds the testimony of the Debtor persuasive and
sufficient to explain the reasonable and necessary expenses for the
Debtors. The objection of Real Time based on the Debtors' expenses
is overruled.

Real Time has articulated a further objection to confirmation, asserting that commencing the Chapter 13 case on the heels of the Chapter 7 discharge is *per se* not in good faith.    Good faith, under 11 U.S.C. §1325(a)(3), is determined based on an examination of the totality of the circumstances.    *Fidelity & Casualty Co. of New York v. Warren (In re Warren), 89 B.R. 87, 92 (9th Cir. B.A.P. 1988) (citing Goeb v. Heid (In re Goeb)*, 675 F.2d 1386, 1389-1390 (9th Cir. 1982)).    Factors to consider include:

1)    The amount of the proposed payments and the amounts of the debtor's surplus;

2)    The debtor's employment history, ability to earn, and likelihood of future increases in income;

3)    The probable or expected duration of the plan;

4)    The accuracy of the plan's statements of the debts, expenses and percentage of repayment of unsecured debt, and whether any inaccuracies are an attempt to mislead the court;

5)    The extent of preferential treatment between classes of creditors;

6)    The extent to which secured claims are modified;

7)    The type of debt sought to be discharged, and whether any such debt is nondischargeable in Chapter 7;

8)    The existence of special circumstances such as inordinate medical expenses;

9)    The frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

10)    The motivation and sincerity of the debtor in seeking Chapter 13 relief; and

11)    The burden which the plan's administration would place upon the trustee.

*In re Warren*, 89 B.R. at 93 (citing *In re Brock*, 47 B.R. 167, 169 (Bankr. S.D. Cal. 1985) (quoting *U.S. v. Estus (In re Estus)*, 695 F.2d 311, 317 (8th Cir. 1982))).

The Real Time objection implicates the ninth, and tenth non-exclusive factors.   In substance, Real Time asserts that the Debtors are merely attempting to do indirectly through a Chapter 20 which the Supreme Court has barred in a Chapter 7 case - using 11 U.S.C. §506(a) to "strip a lien" through a confirmed plan.   Real Time's arguments are unpersuasive and not supported by the evidence in this case.

The Debtors in this case are not merely filing a perfunctory Chapter 13 Plan where no creditors are paid or arrearage cured. This is not a situation as in *In re Jarvis*, and *In re Tran* and *In re Bennett* with nominal payments and no substantive reorganization by the consumer debtor.   In  those cases the courts concluded that the Chapter 13 case was filed solely for the purpose of obtaining a lien strip, with the incidental effect of paying nominal attorneys' fees for filing the Chapter 13 case.

The present case provides an entirely different situation. The Debtors have committed to a 60-month plan and payments of $2,743.00 a month, with plan payments totaling $164,580.00. Through the plan the debtors will cure a $20,000.00 arrearage on the Bank of America secured claim and save their residence from foreclosure.   The Debtors will also pay the prepetition claim of $4,500.00 secured by the Debtors' car and an Internal Revenue Service prepetition nondischargeable claim of $16,417.00.   The estimated Debtors' attorneys fees are only $2,000 to be paid through the plan and the Chapter 13 trustee fees are projected to be $13,166.40.  An additional $104,280.00 will be paid through the plan for post-petition installments on the Bank of America secured claim.

1   The curing of the arrearage and saving their family residence,

2   and payment of several pre-petition claims represent a real,

3   substantial plan and financial reorganization for these Debtors.

4   The court finds that the plan has been proposed in good faith, and

5   not by any means forbidden by law.  Further, that the plan complies

6   with the provisions of 11 U.S.C. §1322 for the contents of a plan

7   and 11 U.S.C. §1325(a) and (b) for confirmation of the plan

8   proposed in this case.

9   The Real Time objections to confirmation are overruled, and

10  the plan is confirmed by the court.

11  This Memorandum Opinion and Decision constitutes the Findings

12  of Fact and Conclusions of law in support of the order determining

13  the value of the Real time secured claim to be $0.00, and the order

14  overruling the objection to confirmation of the Chapter 13 Plan.

15  Dated: January **10**, 2011

16

17  RONALD H. SARGIS, Judge
    United States Bankruptcy Court

18

19

20

21

22

23

24

25

26

27

28

This document does not constitute a certificate of service.  The parties listed below will be served a separate copy of the attached document(s).

---

Cassandra Richey
PO Box 4365
Woodland Hills, CA 91365-4365

Talvinder Bambhra
1214 F St
Sacramento, CA 95814

Jennifer Frazier
5610 Illinois Ave
Fair Oaks, CA 95628

Philip Frazier
5610 Illinois Ave
Fair Oaks, CA 95628

Lawrence Loheit
PO Box 1858
Sacramento, CA 95812-1858

Office of the U.S. Trustee
Robert T Matsui United States Courthouse
501 I Street, Room 7-500
Sacramento, CA 95814